IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00701-RM-BNB

WALTER MYERS,
KATHERINE MYERS,
AMANDA WEAKLAND, and
PATRICK WEAKLAND,

Plaintiffs,

v.

BUREAU OF LAND MANAGEMENT, an agency of the United States,

Defendant, and

PARK CENTER WATER DISTRICT,

Defendant-Intervenor.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on defendant Bureau of Land Management's **Amended Motion for Partial Dismissal of the Complaint** [Doc. #26, filed 08/09/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I. STANDARD OF REVIEW

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II. BACKGROUND

The plaintiffs filed their Complaint for Declaratory and Injunctive Relief and Civil Penalties on March 18, 2013 [Doc. #1] (the "Complaint"). The plaintiffs' action is brought pursuant to the citizen suit provision of the Federal Water Pollution Control Act, more commonly known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*. The plaintiffs allege that defendant Bureau of Land Management ("BLM") is responsible for the effluent coming from the Park Center Wells on its land into the Fourmile Creek and that the BLM has discharged, and will continue to discharge, pollutants from the Park Center Wells into Fourmile Creek without a National Pollution Discharge Elimination System ("NPDES") permit.

The plaintiffs assert three claims against the BLM. Claim One alleges that because the BLM's discharges of pollutants are not authorized by an NPDES permit, the discharges are in violation of 33 U.S.C. § 1311(a). Claim Two alleges that the "BLM's past and present

discharges of uranium, flow, and iron have exceeded the effluent limitations contained in" section 31 of the Colorado Department of Public Health and Environment's ("CDPHE") limitations for Fourmile Creek and, therefore, constitute violations of 33 U.S.C. §§ 1311(a) and 1342, and the regulations implementing the CWA (40 C.F.R. § 122.41(a)).  Claim Three alleges that, to the extent the BLM has any NPDES permits for its ongoing effluent pollution, it failed to properly operate and maintain the Park Center wells in compliance with the permitting obligations in violation of 33 U.S.C. §§ 1311(a) and 1342 and the regulations implementing the CWA (40 C.F.R. § 122.41(a)).  The plaintiffs seek declaratory relief, injunctive relief, remedial relief,  civil penalties, and litigation expenses.

The Motion seeks dismissal of Claims Two and Three and the claims for civil penalties. In response to the Motion, the plaintiffs have withdrawn Claim Three and their claim for civil penalties against the BLM.  *Plaintiffs' Response to BLM's Motion for Partial Dismissal of the Complaint* [Doc. #36] (the "Response"), pp. 2-3, 7-9.  Therefore, I address the Motion only to the extent it seeks dismissal of Claim Two.

### III.  ANALYSIS

Claim Two alleges that the "BLM's past and present discharges of uranium, flow, and iron have exceeded the effluent limitations contained in Section 31 of [the Colorado Department of Public Health and Environment] limitations for Fourmile Creek.  Such discharges constitute violations of . . . 33 U.S.C. §§ 1311(a), 1342, and the regulations implementing the CWA, 40 C.F.R. § 122.41(a)."  *Complaint*, ¶ 40.

The defendants argue that although 33 U.S.C. § 1365(a)(1)(A) allows citizen suits against the United States for violation of "an effluent standard or limitation," the definition of

3

"effluent standard or limitation" contained in that section does not include state water quality standards. *Motion*, p. 13.

The plaintiffs assert that under the CWA, effluent <u>limitations</u> are promulgated by the EPA, but effluent <u>standards</u> are promulgated by the states and approved by the EPA. The plaintiffs argue that state water quality standards are included within section 1365(a)(1)(A) because "[w]ithout including both the limitations set by the EPA and the standards set by the State, this provision of § 1365 has no meaning or is unduly duplicative." *Plaintiff's Response to BLM's Motion for Partial Dismissal of the Complaint* [Doc. #36] (the "Response"), pp. 5-6.

To determine whether the plaintiffs may bring a citizens' suit under section 1365(a) for violation of state water quality standards, I look first to the language of the relevant statutory provisions. "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." <u>Russello v. United States</u>, 464 U.S. 16, 20, (1983) (internal quotations and citations omitted). The Tenth Circuit Court of Appeals has stated:

> It is our primary task in interpreting statutes to "determine congressional intent, using 'traditional tools of statutory construction.'" <u>NLRB v. United Food & Commercial Workers Union,</u> 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987) (quoting <u>INS v. Cardoza–Fonseca</u>, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). As in all cases requiring statutory construction, "we begin with the plain language of the law." <u>United States v. Morgan</u>, 922 F.2d 1495, 1496 (10th Cir.1991). In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs. <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed. 582 (1985). Therefore, "[i]t is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls." <u>Edwards v. Valdez</u>, 789

> F.2d 1477, 1481 (10th Cir.1986).  Where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent.  United States v. Richards, 583 F.2d 491, 495 (10th Cir.1978).  Furthermore, legislative history may not be used to create ambiguity in the statutory language.  Id.  Our role in construing statutes was summarized by Justice Holmes: " 'We do not inquire what the legislature meant; we ask only what the statute means.' "  Edwards, 789 F.2d at 1481 n. 7 (quoting Oliver Wendell Holmes, Collected Legal Papers 207 (1920)).

St. Charles Inv. Co. v. C.I.R., 232 F.3d 773, 776 (10th Cir. 2000).

Section 1365(a) of the CWA authorizes federal jurisdiction over citizen suits "against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of . . . . an effluent standard or limitation under this chapter . . . ."  33 U.S.C. § 1365(a)(1).  In defining "effluent standard or limitation," section 1365 refers to various discharge-related limitations that may be imposed by certain other sections of the CWA.  33 U.S.C. § 3365(f).  The plaintiffs' arguments notwithstanding, section 1365 does not authorize them with standing to assert a claim for violation of state water quality standards that is not part

of a permit [1] or a certification.  Therefore, the Motion should be granted insofar as it seeks dismissal of Claim Two.

## IV. CONCLUSION

I respectfully RECOMMEND[2] that:

(1)  Defendant Bureau of Land Management's Amended Motion for Partial Dismissal of the Complaint [Doc. #26] be GRANTED insofar as it seeks dismissal of Claim Two; and

---

[1] The permit process has been described as follows:

> The National Pollutant Discharge Elimination System ("NPDES") provides that an entity that wishes to discharge pollutants into a particular waterway must obtain a permit from the Administrator of the EPA to do so.  33 U.S.C. § 1342(a).  The Clean Water Act also authorizes the individual states to establish and maintain their own NPDES-permit program so long as it meets the standards set forth in the Clean Water Act and is approved by the Administrator of the EPA. Id. § 1342(b).  Failure to comply with the conditions of either the EPA-issued or state-issued NPDES permit can subject a violator to either civil, criminal, or administrative enforcement proceedings and sanctions. Id. § 1319.  Violations of state-issued permits can be enforced by either the Federal Administrator of the EPA or the appropriate state authorities. Id.; see also id. § 1342(b)(7).  Finally, violation of either an EPA-issued or state-issued NPDES permit can be subject to a civil action brought by a private citizen in the absence of appropriate federal or state enforcement as described above. Id. § 1365(a).

Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC, 548 F.3d 986, 988 (11th Cir. 2008).

[2] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

(2) Claim Three and the plaintiffs' claim for civil penalties against the BLM be DISMISSED pursuant to the plaintiffs' request.

Dated February 12, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge